No. 20-55770
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

WILLIAM BARR, et al.,
Respondents-Appellants,

v.

ALEJANDRO RODRIGUEZ, et al.,
Petitioners-Appellees.

_____

On Appeal from the United States District Court, Central District of California
No. CV 07-3239-TJH (RNB)
_____

**PETITIONERS-APPELLEES' ANSWERING BRIEF**
_____

AHILAN T. ARULANANTHAM
aarulanantham@aclusocal.org
MICHAEL KAUFMAN
mkaufman@aclusocal.org
ZOE MCKINNEY
zmckinney@aclusocal.org
ACLU Foundation
   of Southern California
1313 West Eighth Street
Los Angeles, CA 90017
Telephone: (213) 977-5211
Facsimile: (213) 977-5297

JUDY RABINOVITZ
jrabinovitz@aclu.org
MICHAEL TAN
mtan@alcu.org
ACLU Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2618
Facsimile: (212) 549-26

JAYASHRI SRIKANTIAH
jsrikantiah@law.stanford.edu
Stanford Law School
Immigrants' Rights Clinic
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: (650) 724-2442
Facsimile: (650) 723-4426

SEAN COMMONS
scommons@sidley.com
ALEXANDRIA V. RUIZ
aruiz@sidley.com
Sidley Austin LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

# CORPORATE DISCLOSURE STATEMENT

There are no corporations involved in this case.

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

PROCEDURAL HISTORY.....................................................................3

    A.    Case History ...........................................................................3

    B.    Respondents' Serial Attempts to Vacate the Injunction
           and Decertify the Class ..........................................................5

    C.    District Court Case Schedule ................................................8

ARGUMENT ........................................................................................10

    I.    This Court Should Again Reject Respondents' Request
        to Vacate the Permanent Injunction ...................................11

        A.    The District Court Did Not Issue a New "Preliminary"
              Injunction ................................................................12

        B.    This Court Already Rejected Respondents' Arguments
              for Vacatur ..............................................................14

    II.    There is No Basis to Reverse the District Court's Denial
        Without Prejudice of Respondents' Decertification Motion ..............20

        A.    Defendants Failed to Seek Permission for an
              Interlocutory Appeal of the District Court's
              Decertification Order ...............................................21

            1.    The Federal Rules Require a Party to Seek
                  Permission for an Interlocutory Appeal of a
                  Class Certification Order ................................21

            2.    Respondents Were Required to Seek Permission
                    to Appeal the District Court's Decertification
                  Order Under Rule 23(f) ..................................26

B.    The District Court Did Not Commit Reversible
      Error by Determining the Schedule for Respondents'
      Decertification Motion ............................................................30

CONCLUSION .........................................................................................34

# TABLE OF AUTHORITIES

## Cases

*ABS Entertainment, Inc. v. CBS Corporation*,
  908 F.3d 405 (9th Cir. 2018) ........................................................28, 30

*Barnes v. Healy*,
  980 F.2d 572 (9th Cir. 1992) ...............................................................28

*Chafin v. Chafin*,
  568 U.S. 165 (2013)..............................................................................32

*Davidson v. O'Reilly Auto Enterprises. LLC*,
  968 F. 3d 955 (9th Cir. 2020) .............................................27, 30, 33

*Diouf v. Napolitano (Diouf II)*,
  634 F.3d 1081 (9th Cir. 2011) .............................................................32

*Fields v. McQueen*,
  828 F. App'x 433 (9th Cir. 2020) ........................................................16

*Gutierrez v. Johnson & Johnson*,
  523 F.3d 187 (3d Cir. 2008) ................................................................24

*Hongsermeier v. C.I.R.*,
  621 F.3d 890 (9th Cir. 2010) ...............................................................16

*Immigrant Assistance Project of Los Angeles County Federation of
  Labor (AFL-CIO) v. I.N.S.*,
  306 F.3d 842 (9th Cir. 2002) ...............................................................24

*Jennings v. Rodriguez (Rodriguez IV)*,
  138 S. Ct. 830 (2018)......................................................................5, 15

*Jorgensen v. Cassiday*,
  320 F.3d 906 (9th Cir. 2003) ...............................................................33

*Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*,
  601 F. App'x 469 (9th Cir. 2015).........................................................28

*Microsoft Corp. v. Baker*,
  137 S. Ct. 1702 (2017)................................................................*passim*

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) (en banc) ............................................................24

*Nutraceutical Corp. v. Lambert*,
139 S. Ct. 710 (2019) ...................................................................*passim*

*Paige v. California*,
102 F.3d 1035 (9th Cir. 1996) ............................................................24

*Preminger v. Peake*,
552 F.3d 757 (9th Cir. 2008) .............................................................33

*Rodriguez v. Hayes (Rodriguez I)*,
591 F.3d 1105 (9th Cir. 2010) ............................................................3

*Rodriguez v. Marin (Rodriguez V)*,
909 F.3d 252 (9th Cir. 2018) ...................................................*passim*

*Rodriguez v. Robbins (Rodriguez II)*,
715 F.3d 1127 (9th Cir. 2013) .....................................................4, 17

*Rodriguez v. Robbins (Rodriguez III)*,
804 F.3d 1060 (9th Cir. 2015) ...............................................5, 16, 17

*United States v. W.R. Grace*,
526 F.3d 499 (9th Cir. 2008) (en banc) .............................................33

*Vinole v. Countrywide Home Loans, Inc.*,
571 F.3d 935 (9th Cir. 2009) ............................................................30

*Walker v. Life Ins. Co. of the Southwest*,
953 F.3d 624 (9th Cir. 2020) ......................................................23, 29

**Statutes**

8 U.S.C. 1225(b) ............................................................................4

8 U.S.C. 1226(a) ............................................................................4

8 U.S.C. 1226(c) ............................................................................4

8 U.S.C. 1231(a) ............................................................................4

28 U.S.C. 1291 .............................................................................25

iv

28 U.S.C. 1292 .................................................................................21

28 U.S.C. 1292(a)(1) .......................................................................21

## Other Authorities

Fed. R. Civ. P. 23(f) ................................................................*passim*

**INTRODUCTION**

The core issue Respondents raise in this appeal is meritless. It rests entirely on arguments this Court already rejected. After the Supreme Court remanded this case, this Court denied Respondents' request that the Court vacate the permanent injunction before resolving Petitioners' constitutional claims. *Rodriguez v. Marin (Rodriguez V)*, 909 F.3d 252, 256 (9th Cir. 2018) ("Like the Supreme Court, we do not vacate the permanent injunction *pending resolution of these vital constitutional issues*" and remanding to the district court) (emphasis added). Undeterred, Respondents renewed their motion before the district court. Unsurprisingly, they lost again, as the parties had not completed the discovery they agreed was needed to resolve the constitutional issues.

But rather than focus on completing district court proceedings, Respondents filed this appeal, claiming the district court erred by following this Court's decision to maintain the injunction. In doing so, Respondents recycle the *exact same* arguments this Court already rejected in its prior decision denying their premature motion to vacate the injunction. This Court should reject them again.

Respondents also take issue with the district court's denial without prejudice of their motion to decertify the class. This aspect of their appeal is also plainly meritless, for two basic reasons. First, this Court has no jurisdiction to consider the class certification issue because Respondents failed to seek leave to appeal this

1

class certification order. *See* Fed. R. Civ. P. 23(f).

Second, Respondents' only apparent complaint is that the district court deferred consideration of their motion. But district courts have broad discretion to control the order of presentation of issues, particularly in a complex class action like this one. The district court reasonably determined that the class and merits issues should be presented together based on a complete factual record. Indeed, Respondents themselves recognize that the class and merits issues are deeply intertwined such that "there is no way to separate the class issues from the validity of a classwide injunction." Respondents' Opening Brief ("Op."), ECF No. 6 at 22. The order here is nowhere near an abuse of discretion.

Respondents observe that the Supreme Court directed that class certification issues should be addressed "before" consideration of Plaintiffs' constitutional claims, but it hardly follows that the district court had to address the class issues at a time of Respondents' choosing. Even assuming the Supreme Court's statement should be understood as a limitation on the district court's broad authority over case management, nothing in the district court's ruling will prevent it from ruling on class certification issues "before" turning to the merits of Plaintiffs' claims.

To be clear, Respondents have had, and still have, ample opportunity to present their claims that the class should be decertified and that the injunction cannot be sustained on constitutional grounds. Both this Court and the district court

2

have provided them a roadmap for how to do that. But rather than proceed as directed, Respondents have serially litigated motions to vacate and decertify the class while simultaneously seeking no fewer than *eleven* extensions of deadlines from the district court. Respondents may well be displeased with the age of this case, but they cannot blame the district court. This Court should dismiss Respondents' latest attempt to vacate the injunction and decertify the class, and allow the parties to get on with resolving the remaining issues.

## PROCEDURAL HISTORY

This appeal arises from the district court's denial of the government's motions to vacate the *Rodriguez* injunction and decertify the class. ER 4. Petitioners here summarize the procedural history relevant to the district court's decision.

### A.     Case History

Petitioners filed this class habeas petition in 2007, alleging the prolonged confinement of class members without rigorous individualized bond hearings violates the Immigration and Nationality Act and the Fifth Amendment's Due Process Clause. The district court initially denied class certification, Petitioner appealed, and this Court reversed. *Rodriguez v. Hayes (Rodriguez I)*, 591 F.3d 1105 (9th Cir. 2010). Upon remand, the district court certified a class consisting of "all non-citizens within the Central District of California who: (1) are or were

detained for longer than six months pursuant to one of the general immigration detention statutes pending completion of removal proceedings, including judicial review, (2) are not and have not been detained pursuant to a national security detention statute, and (3) have not been afforded a hearing to determine whether their detention is justified." SER 81.[1] On March 8, 2011, the court approved the following subclasses within the certified class: (1) a subclass of members detained under 8 U.S.C. 1225(b); (2) a subclass of members detained under 8 U.S.C. 1226(a); (3) a subclass of members detained under 8 U.S.C. 1226(c); and (4) a subclass of members detained under 8 U.S.C. 1231(a). *See* SER 80, 75.

In 2012, the district court entered a preliminary injunction requiring that the government provide all members of the Section 1225(b) and 1226(c) subclasses with an immigration judge bond hearing at which the government bears the burden of proof by clear and convincing evidence. SER 73. This Court affirmed. *Rodriguez v. Robbins* (*Rodriguez II*), 715 F.3d 1127 (9th Cir. 2013). In 2013, the district court entered a permanent injunction requiring largely the same relief to the entire class. SER 67. With two exceptions, this Court affirmed on statutory

---

[1] "SER" citations are to the Supplemental Excerpts of Record filed concurrently with Petitioners' Answering Brief. "ER" citations are to the Excerpts of Record filed by Respondents. "ECF No." citations are to the Ninth Circuit record in Respondents' present appeal. "*Rodriguez V*, ECF No." citations are to the Ninth Circuit record in the prior appeal, No. 13-56706.

grounds.[2] On February 27, 2018, the Supreme Court reversed and remanded, but declined either to vacate the injunction or to consider Petitioners' constitutional claims. *Jennings v. Rodriguez (Rodriguez IV)*, 138 S. Ct. 830 (2018). Instead, it directed this Court to consider the constitutional claims in the first instance, along with several other issues concerning class certification. *Id.* at 851-52.

## B. Respondents' Serial Attempts to Vacate the Injunction and Decertify the Class

This appeal represents Respondents' *sixth* attempt to vacate the permanent injunction since the Supreme Court's decision.

Immediately on remand from the Supreme Court, Respondents filed a motion to vacate the permanent injunction in this Court, which Petitioners opposed. *See Rodriguez V*, ECF Nos. 149, 152. This Court subsequently directed the parties to file supplemental briefs on the scope of the remand. *Rodriguez V*, ECF No. 150. The Court denied Respondents' motion to vacate without prejudice, stating it would "refrain from addressing the merits of the motion until all parties have had the opportunity to be heard fully, on the briefs and at oral argument." *Rodriguez V*, ECF No. 154 at 2.

In supplemental briefing, Respondents insisted the Court must "vacate the

---

[2] The Court reversed as to the Section 1231(a) subclass on the ground that it "d[id] not exist." *Rodriguez v. Robbins (Rodriguez III)*, 804 F.3d 1060, 1086 (9th Cir. 2015). It also required that *Rodriguez* bond hearings occur periodically every six months, which the district court's injunction had not required. *Id.* at 1074.

injunction *immediately*." *Rodriguez V*, ECF Nos. 221 at 1; 212 at 2 (requesting vacatur of the injunction "*without further delay*") (emphases added). They argued the Supreme Court's decision eliminated the only basis for the injunction, and that Petitioners could only obtain injunctive relief by bringing a new motion for a preliminary injunction on their constitutional claims. *See Rodriguez V*, ECF Nos. 212 at 7-10; 221 at 1-3. Petitioners opposed vacatur. *Rodriguez V*, ECF Nos. 213 at 31 n.12; 221 at 1-3; and 229 at 4-5.

After briefing and argument, this Court remanded to the district court to address the remaining issues in the case in the first instance. *Rodriguez V*, 909 F.3d at 256. It directed the district court on remand to address (among other issues) whether the class should remain certified for the constitutional claims, whether a class action is appropriate for those claims, and whether the composition of the subclasses should be reconsidered. *Id*. at 257.

Most important for present purposes, this Court rejected Respondents' request for vacatur of the injunction: "[l]ike the Supreme Court, we do not vacate the permanent injunction pending consideration of these vital constitutional issues." *Id*. Respondents did not ask the Court to reconsider any aspect of its decision, including its determination that the injunction would remain in place "pending" consideration of Petitioners' constitutional claims. Nor did Respondents seek rehearing or rehearing en banc.

On remand to the district court, Petitioners filed a Fourth Amended Complaint (FAC), including new subclass definitions based on class members' constitutional claims. ER 20-55. Respondents moved to dismiss the FAC, and the district court granted that motion in part and denied it in part. ER 15-19. Although Respondents had not asked the district court to vacate the permanent injunction, the district court ruled, *sua sponte*, that the Supreme Court had "implicitly" vacated it, but that the preliminary injunction remained in place. ER 16. Petitioners promptly moved for reconsideration, advising that this Court had expressly declined to vacate the permanent injunction to enable the district court to consider the constitutional issues. SER 42. Shortly afterward, Respondents filed a "Motion to Vacate the Preliminary Injunction and Decertify the Class," which Petitioners opposed. SER 27.

The district court then granted Petitioners' motion for reconsideration and issued an amended order, reinstating the permanent injunction. ER 9-12, 13-14. Citing this Court's order declining to vacate the injunction, the Court held it would "keep the permanent injunction in place pending a resolution on Petitioners' constitutional claims." ER 14. In response, Respondents filed a "Motion for Reconsideration and To Vacate the Permanent Injunction," resulting in yet another round of briefing on the same issue. SER 22. Respondents claimed it was necessary to file a separate motion to vacate because the district court's order had

clarified that the permanent injunction, and not a preliminary injunction, remained in place. SER 23.

Ultimately, the district court issued a single order that is the subject of this appeal. ER 4. That order denied both Respondents' "Motion to Vacate the Preliminary Injunction and Decertify the Class" and their "Motion for Reconsideration and to Vacate the Permanent Injunction." *Id.* As to class certification, the district court found that decertification would inhibit the parties' and the court's ability to resolve the remaining issues. ER 8. With respect to vacatur, the court recognized, again, that this Court had denied Respondents' prior motion to vacate the permanent injunction and concluded accordingly that it should leave "the permanent injunction in place." ER 7.

On July 27, 2020, Respondents filed a notice of appeal, ER 1-3, but did not seek permission from this Court to appeal the district court's denial of its motion to decertify the class under Rule 23(f). Petitioners filed a motion to dismiss Respondents' appeal of the class certification decision as an improper interlocutory appeal in violation of Fed. R. Civ. P. 23(f). ECF No. 12. On October 26, 2020, this Court denied Petitioners' motion "without prejudice to renewal in the answering brief." ECF. No. 17.

## C.    District Court Case Schedule

At the same time that the parties were litigating Respondents' multiple

attempts to vacate the injunction and decertify the class, Respondents sought—jointly with Petitioners—eleven extensions that lengthened the proceedings in district court.[3] The extensions were sought for various reasons, including to permit the parties to complete certain agreed-upon discovery, to accommodate the schedules of the parties' counsel and Petitioners' retained expert, and due to complications from COVID-19. As a result of these requests, the parties have stipulated to complete discovery by May 14, 2021 and file dispositive motions by September 3, 2021. *See* SER 6-8.

Petitioners do not describe this history to criticize Respondents' conduct in the district court, or to suggest that the extensions were not warranted. Petitioners proposed several of these extensions, and did not oppose any of them. They reflect unavoidable delays due to forces beyond anyone's control, professional courtesies extended by both sides' counsel, and other circumstances that arise from time to

---

[3] *See* SER 65 (stipulation for an extension of a status conference before the district court on remand); SER 63 (second stipulation for an extension of the status conference); SER 59 (stipulation to extension to file an amended complaint); SER 57 (stipulation to extension to the briefing schedule on Petitioners' motion to amend the complaint); SER 55 (stipulation to extension of Respondents' time to respond to the amended complaint); SER 53 (second stipulation to extend Respondents' time to respond to the amended complaint); SER 25 (stipulation to extend the hearing date on Respondents' motion to vacate the preliminary injunction and decertify the class); SER 18 (stipulation to 60-day suspension of the case schedule due to COVID-19); SER 14 (stipulation to 30-day suspension of the case schedule due to COVID-19); SER 9 (stipulation to a new case schedule, with a deadline to notice any dispositive motions by June 21, 2021); SER 4 (stipulation to a further extension of new case schedule).

time in litigation. Petitioners describe them only because they bear directly on Respondents' suggestion that the district court is to blame for Respondents' purported inability to obtain a ruling on the merits during the last two years.

## ARGUMENT

This Court has denied the relief that Respondents seek once before and should do so again. Nothing has changed since this Court last rejected Respondents' arguments for vacatur of the injunction pending consideration of Petitioners' constitutional claims. Respondents attempt to camouflage recycled arguments by asserting that the district court issued a new "preliminary" injunction, and that this "preliminary" injunction cannot be sustained for the same reasons that Respondents believed the permanent injunction could not. But the district court was unmistakably clear that it was maintaining the permanent injunction that has been in place since 2013, as this Court had done. It did not enter a new "preliminary" injunction.

Respondents' challenge to the district court's denial of the motion to decertify fares no better. This Court lacks jurisdiction over this claim because Respondents failed to seek permission to pursue an interlocutory appeal under Fed. R. Civ. P. 23(f). Recent Supreme Court precedent has eliminated pre-existing court-made exceptions to Rule 23(f)'s unambiguous command, including those Respondents invoke to justify their failure to comply with Rule 23(f).

10

Regardless, Respondents have clarified that their only argument on appeal concerns the *timing* of the district court's consideration of class certification. Specifically, Respondents contend the district court should not have deferred consideration of their motion because the Supreme Court directed it to decide class certification issues "before" the merits of Plaintiffs' claims. But the district court did not refuse to consider class certification issues "before" the merits. It simply found that, in the interest of judicial economy, it would not decide the issues at that time.

The district court enjoys wide discretion over managing the case schedule. Respondents fail to identify any grounds on which the district court abused its broad discretion by deferring consideration of class certification. This is particularly true because Respondents admit that merits discovery remains incomplete, and that their arguments for decertification are based principally on their view of the merits of Petitioners' claims. It therefore makes perfect sense for the district court to defer consideration of Respondents' request for decertification until it receives full briefing on the remaining issues in the case, including the merits, based on a complete factual record.

## I.    This Court Should Again Reject Respondents' Request to Vacate the Permanent Injunction

This Court should reject Respondents' *sixth* attempt to vacate the permanent injunction after the Supreme Court remanded this case, but before any court has

decided the questions the Supreme Court directed the lower courts to resolve. This Court previously concluded that the record in this case discloses a large number of constitutional violations that the injunction serves to prevent. That has not changed. As a result, there is no reason to disturb this Court's conclusion that vacatur prior to final resolution of the constitutional claims would be inappropriate.

## A.     The District Court Did Not Issue a New "Preliminary" Injunction

Respondents repeatedly claim the district court issued a new "preliminary" injunction. Op. 8-13. The record proves otherwise. The district court's order makes crystal clear that it was maintaining the same injunction that has been in place since 2013, not issuing a new preliminary injunction. *See* ER 7 ("this Court is obligated to" leave "the *permanent* injunction in place"); *id.* (finding Respondents' motion "to vacate the *permanent* injunction must be denied"); *id*. (observing that, in light of its order, "there is a *permanent* injunction in place"); *id.* at 8 (considering Respondents' motion to de-certify in light of "the continuation of the *permanent* injunction") (emphases added).

If Respondents were correct that the district court issued a new preliminary injunction because it "acknowledged the force of the government's position that it is not appropriate to have a permanent injunction in place before a final judgment on the merits of the constitutional claims," Op. 7, then the district court would have granted Respondents' motion to vacate the permanent injunction. But it did not.

The district court unequivocally held Respondents' motion "to vacate the permanent injunction must be denied" and instead left "the permanent injunction in place." ER 7. And, of course, it would make no sense for the district court to have issued a preliminary injunction given that it left the existing permanent injunction in place.

Respondents observe that the district court referred to the injunction as "in effect, a preliminary injunction," Op. at 10, but they take this statement out of context and, in any event, it cannot change the fact that the district court expressly left the permanent injunction in place. After first making unmistakeably clear that it would maintain the permanent injunction, the district court observed that it was unusual to have a "permanent injunction in place without a corresponding final judgment," referring to this as a "procedural quagmire." ER 7. The district court reconciled this arrangement by analogy, observing that the injunction operated "in effect" like a preliminary injunction because it would "remain in place pending a final resolution of Petitioners' constitutional claims." *Id*. This passage does not transform the district court's order into the grant of a new preliminary injunction, as Respondents contend. To the contrary, it shows the district court understood it was maintaining the 2013 injunction. There would have been no "procedural quagmire" for the district court to address if it had vacated the permanent injunction and simultaneously issued a new preliminary injunction, as Respondents

13

argue here.

That the district court never granted a new preliminary injunction also resolves the purported mystery of why the district court did not apply the *Winter* standard for preliminary relief. *See* Op. at 11 (arguing that the district court failed to "discuss" "any of the [] *Winter* factors"). The answer is simple: *it was not granting preliminary relief*. It is not because, as Respondents suggest, the district court did not understand that "[p]reliminary injunctive relief is only appropriate if the moving parties can satisfy the standard set forth in *Winter*." Op. at 10. The district court is perfectly aware of the governing legal standards for preliminary relief, as it cited them in granting a preliminary injunction earlier in this case. *See* Dkt. 255 at 1 (granting "preliminary injunction" based on the "substantial likelihood of success on the merits," "irreparable injury," and the "balance of hardships").

Because the district court merely maintained the pre-existing *Rodriguez* permanent injunction, and did not issue a new preliminary injunction, Respondents' claim that the district court failed to conduct the required *Winter* analysis is meritless. The district court did not need to conduct any "analysis" to know that it is bound by this Court's ruling that the permanent injunction should remain in place "pending the consideration of" Petitioners' constitutional claims. *See Rodriguez V*, 909 F.3d at 256.

14

**B.  This Court Already Rejected Respondents' Arguments for Vacatur**

Respondents' arguments for vacatur will no doubt appear familiar to this Court, because Respondents have recycled the *exact same* arguments they advanced the last time they asked this Court to vacate the injunction. As before, Respondents argue that:

- *Jennings v. Rodriguez (Rodriguez IV)* eliminated the basis for the permanent injunction. *Compare* ECF No. 6 at 10 *with Rodriguez V*, ECF No. 212 at 7 *and Rodriguez V*, ECF No. 221 at 1;

- Petitioners cannot maintain the injunctive relief previously issued unless they move for a preliminary injunction based on their constitutional claims. *Compare* ECF No. 6 at 10-11 *with Rodriguez V*, ECF No. 212 at 7 and *Rodriguez V*, ECF No. 221 at 1-2;

- Petitioners cannot show a likelihood of success on their constitutional claims. *Compare* ECF No. 6 at 11-13 *with Rodriguez V,* ECF No. 212 at 8-9 *and Rodriguez V*, ECF No. 221 at 2-3.

When Respondents last advanced these arguments to support their vacatur request, Petitioners opposed the request and explained that the constitutional claims they already pled coupled with the extensive record of unconstitutional detentions in this case provided ample basis for maintaining the injunction, and that all the equitable factors weighed strongly against vacatur. *See Rodriguez V*, ECF

15

Nos. 152; 229 at 4-5.

This Court agreed with Petitioners, rejected Respondents' arguments, and denied Respondents' request to vacate the permanent injunction. *Rodriguez V*, 909 F.3d at 256 ("Like the Supreme Court, we do not vacate the permanent injunction pending the consideration of these vital constitutional issues."). The Court explained its rationale for maintaining the injunction: "We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Id*.

That ruling should be treated as law of the case. *See, e.g.*, *Hongsermeier v. C.I.R.*, 621 F.3d 890, 903 (9th Cir. 2010) ("Under the law of the case doctrine, 'one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case.'") (quoting *Kimball v. Callahan*, 590 F.2d 768, 771 (9th Cir. 1979); *Rodriguez III*, 804 F.3d at 1080 (treating prior ruling as law of the case and law of the circuit where "no intervening changes in the law" justified reconsidering it and district courts had relied on the prior ruling); *Fields v. McQueen*, 828 F. App'x 433, 434 (9th Cir. 2020) (memorandum) (holding that law of the case doctrine "foreclosed" arguments rejected by prior panel). If Respondents disagreed with the Court's ruling, they could have sought reconsideration or en banc review of this Court's

remand order in *Rodriguez V*. But they did not.

Even were the prior ruling open to reconsideration notwithstanding law of the case, Respondents have not identified any basis for revisiting this question during this appeal. No pertinent facts or law have changed. Respondents fail to cite any other possible exception to law of the case to justify revisiting this question just two years after a published decision.

Rather than explaining why this Court should depart from its prior conclusion, Respondents simply ignore it, claiming instead that "no court, including the district court, has examined [] the merits" of Petitioners' constitutional claims. ECF No. 6 at 1-2. This is obviously wrong. This Court has previously described the record here in great detail and forcefully explained the due process principles applicable to the claims arising from that record. *See Rodriguez V*, 909 F.3d at 256; *Rodriguez III*, 804 F.3d at1072-78, 1079-80, 1081-83, 1084-85; *Rodriguez II*, 715 F.3d at 1133-44.

Based in large part on that analysis, the district court previously granted Petitioners' motion for a permanent injunction on both Petitioners' statutory *and* constitutional claims. *See* SER 70 (holding that the government is "constitutionally obligated to provide [bond] hearings" after six months of detention). While there is no final judgment in the case, that hardly means that Petitioners' constitutional claims are "unexamined." This Court had more than an adequate basis on which to

maintain the injunction in *Rodriguez V*.

Apart from attempting to relitigate their vacatur request, Respondents also contend the district court did not comply with this Court's remand order. Op. at 7-8. Respondents argue this Court did not actually mean to maintain the injunction "pending" consideration of Petitioners' constitutional claims. Instead, Respondents argue the Court remanded so that the district could engage in the "housekeeping" task of vacating the injunction, SER 39, and then "afford[] Petitioners the opportunity to move for a new preliminary injunction." Op. at 18.

But where do Respondents find these instructions in this Court's opinion in *Rodriguez V*? The decision itself mentions nothing about vacatur on remand or the need for a preliminary injunction, despite Respondents' requests for vacatur in motions practice and supplemental briefing to this Court. Respondents argue the "framing of the district court's tasks on remand" demonstrates it should have vacated the injunction because "this Court remanded for the district court to consider several issues that bear directly on whether a preliminary injunction on the constitutional claims is permissible," including whether Section 1252(f)(1) precludes classwide relief. *Id*. at 6. But, as Respondents acknowledge, binding Ninth Circuit authority forecloses their Section 1252(f)(1) argument. *See id*. at 16 n.1 (citing *Padilla v. Immigration & Customs Enforcement*, 593 F.3d 1134, 1149-52 (9th Cir. 2019)).

18

In any event, to the extent the district court should have consulted the "framing" of this Court's remand instructions rather than its express language, the framing supports the district court's decision to maintain the injunction. *Rodriguez V* listed the issues for the district court to address to determine whether Petitioners are entitled to relief on their constitutional claims, including the applicability of Section 1252(f)(1), and refused to vacate the injunction "pending the consideration of these vital constitutional issues." *Rodriguez V*, 909 F.3d at 256. The issues are grouped together in a list, without any indication that certain issues should be decided well in advance of the others. This Court's "framing" of the issues for remand therefore supports the district court's decision to consider the viability of injunctive relief under Section 1252(f)(1) along with the other issues necessary to decide Petitioners' constitutional claims.

Furthermore, Respondents' position here cannot be reconciled with their conduct below. This Court remanded to the district court on November 18, 2018, yet Respondents took no steps to vacate the injunction for *a whole year*. They pursued that course only after the district court *sua sponte* vacated the injunction on November 7, 2019. The district court took that step when ruling on Respondents' motion to dismiss Petitioners' amended complaint (in which Respondents had not sought vacatur), but it subsequently reconsidered that decision. ER 16-17. If Respondents truly believed the Ninth Circuit intended for

19

vacatur of the injunction as a matter of mere "housekeeping" (SER 39), and that the district court had no choice but to vacate the injunction, then they would have sought that relief immediately on remand.

At bottom, Respondents criticize the district court because they are dissatisfied that they remain subject to an injunction they believe cannot be sustained on constitutional grounds. But, again, the district court is not to blame for the pace of this litigation. Respondents failed to persuade this Court that vacatur was warranted pending resolution of Petitioners' constitutional claims, elected not to seek reconsideration or en banc review of that decision, and then either affirmatively pursued or consented to various extensions in the district court, including after the district court made clear the injunction would remain in place pending resolution of Petitioners' constitutional claims. That a final adjudication has yet to occur is certainly not due to any error by the district court.

## II.    There is No Basis to Reverse the District Court's Denial Without Prejudice of Respondents' Decertification Motion

This Court lacks jurisdiction to consider Respondents' challenge to the district court's denial of their decertification motion because they failed to seek permission for an interlocutory appeal as required by Fed. R. Civ. P. 23(f). *See* ECF Nos. 12, 16. Even assuming this Court has jurisdiction, it should reject Respondents' appeal because the district court did not abuse its broad discretion

over case management by deferring consideration of Respondents' decertification motion.

### A. Defendants Failed to Seek Permission for an Interlocutory Appeal of the District Court's Decertification Order

Respondents assert this Court has jurisdiction over its entire appeal solely on the basis of 28 U.S.C. 1292(a)(1), which applies only to interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions[.]" While that statute provides this Court with jurisdiction over the motion to vacate, Respondents have not established the basis for this Court's jurisdiction over the district court's class certification order. *See* Op. at 4.

### 1. The Federal Rules Require a Party to Seek Permission for an Interlocutory Appeal of a Class Certification Order

The plain terms of 28 U.S.C. 1292 and Rule 23(f) do not permit a party to appeal an order regarding class certification without prior permission. This Court's jurisdiction over interlocutory appeals is defined by 28 U.S.C. 1292. Section 1292(a)(1) confers jurisdiction over interlocutory orders dissolving or refusing to dissolve injunctions. It contains no prior permission requirement. However, an order denying a motion to decertify a class is not an order dissolving (or refusing to dissolve) an injunction. Such orders are appealable only as provided in Section 1292(e), which provides that "[t]he Supreme Court may prescribe rules,"

under the Rules Enabling Act, "to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for under subsection (a), (b), (c), or (d)."[4]

Federal Rule of Civil Procedure 23(f) is the only such rule pertaining to class certification orders. Promulgated in 1998, the Rule provides in relevant part that "[a] court of appeals may permit an appeal from an order granting or denying class-action certification under this rule. . . . A party must file a petition for permission to appeal with the circuit clerk . . . within 45 days after the order is entered if any party is [*inter alia*, a United States officer sued in their official capacity]." This rule "authorizes 'permissive interlocutory appeal' from adverse class-certification orders," but commits the decision whether to permit such appeal to "the sole discretion of the court of appeals." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1709 (2017) (citation omitted). Thus, "[t]o take an immediate appeal from a federal district court's order granting or denying class certification, a party must first seek permission from the relevant court of appeals[.]" *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 713 (2019).

While the order at issue here is a denial of Respondent's motion to decertify, rather than an "order granting … class-action certification," Rule 23(f) applies to orders that are "functionally equivalent" to orders granting class certification.

---

[4] Sections 1292(b)-(d) cover other interlocutory orders not at issue here.

*Microsoft*, 137 S. Ct. at 1711 n.7. The Supreme Court treated a decertification ruling as the functional equivalent of an order denying class certification in *Lambert*, 139 S. Ct. at 713 ("[T]he District Court revisited [the class certification] decision and ordered the class decertified. From that point, Lambert had 14 days to ask the Court of Appeals for the Ninth Circuit for permission to appeal the order.") (citing Rule 23(f)).

Respondents' appeal here is particularly improper because the district court's order below did not "materially change[] the original certification decision." *Walker v. Life Ins. Co. of the Southwest*, 953 F.3d 624, 636 (9th Cir. 2020). As a result, its denial of Respondents' motion for decertification cannot be viewed as "distinct from the original decision" and is not separately appealable as an interlocutory order. *Id.* "[A]n order that leaves the status quo of a prior certification order unchanged neither 'grant[s]' nor 'den[ies]' class-action certification, as required to render an order appealable under Rule 23(f)." *Id.* ("formally join[ing] our sister circuits and adopt[ing] the material-change/status-quo test"). Otherwise, Respondents could file serial motions to decertify in an attempt to manufacture endless opportunities to seek review under Rule 23(f).

In their opposition to Plaintiffs' motion to dismiss, Respondents relied on cases requiring a change in the status quo to restart Rule 23(f)'s deadline to support a right to appeal an order that left the status quo unchanged. ECF No. 15 at 13-14

(citing, *inter alia*, *Walker*, 953 F.3d at 636). But if the Circuits have uniformly held that an unsuccessful motion to reconsider a district court's denial or grant of class certification cannot restart Rule 23(f)'s "strict and mandatory" time limit for requesting permission to appeal, then an unsuccessful motion to decertify filed years after the fact certainly cannot do so either. *See, e.g.*, *Gutierrez v. Johnson & Johnson*, 523 F.3d 187, 193 (3d Cir. 2008) ("period for filing either a Rule 23(f) petition or a motion to reconsider runs from the order granting or denying class certification. A later order that does not change the status quo will not revive the . . . time limit.") (internal citation omitted).

Prior to the adoption of Rule 23(f), this Court had recognized an exception to Section 1292 permitting "pendent appellate jurisdiction" over interlocutory appeals of class certification decisions that were "inextricably intertwined" with orders properly subject to interlocutory appeal. *See Paige v. California*, 102 F.3d 1035, 1039 (9th Cir. 1996); *Immigrant Assistance Project of Los Angeles County Federation of Labor (AFL-CIO) v. I.N.S.,* 306 F.3d 842, 868-70 (9th Cir. 2002). However, those cases are "clearly irreconcilable" with *Microsoft* and *Lambert*. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (holding that a panel decision is no longer binding where intervening authority is "clearly irreconcilable" with the decision).

*Microsoft* established that such common law exceptions are no longer

24

permissible because they permit circumvention of Rule 23(f). 137 S. Ct. at 1711.

*Microsoft* considered whether this Court had properly exercised its jurisdiction

over plaintiffs' appeal of an adverse class certification order. *Id.* at 1706-07. After

an unsuccessful petition to this Court for permission to appeal the denial of class

certification under Rule 23(f), plaintiffs stipulated to voluntary dismissal of their

claims with prejudice, reserving the right to reinstate those claims should the

appellate court reverse the class certification denial. *Id.* This Court held it could

entertain the appeal as though it were an appeal from a final order under 28 U.S.C.

1291. *Id.* at 1711. The Supreme Court reversed, holding that the voluntary

dismissal "tactic would undermine § 1291's firm finality principle, designed to

guard against piecemeal appeals, and *subvert the balanced solution Rule 23(f) put*

*in place for immediate review of class-action orders*." *Id.* at 1707 (emphasis

added).

 *Microsoft* clarified that by enacting Section 1292(e), Congress authorized

the Supreme Court "to provide for appellate review of interlocutory orders not

covered by statute." 137 S. Ct. at 1714. Those provisions *must* "come from

rulemaking"—like Rule 23(f)—"not judicial decisions in particular controversies

or inventive litigation ploys." *Id.* The Supreme Court reasoned that "Rule 23(f)

reflects the rulemakers' informed assessment" and "careful calibration," which

"warrants the Judiciary's full respect." *Id.* at 1715 (quotation marks and citation

omitted). Allowing parties to sidestep its requirements would "undercut [it]s discretionary regime" and undermine "Congress' designation of rulemaking as the preferred means for determining whether and when pre-judgment orders should be immediately appealable." *Id.*

*Microsoft*'s rationale clearly cannot be reconciled with this Court's pre-existing "inextricably intertwined" doctrine. Under *Microsoft*, judicially-created rules purporting to confer jurisdiction over appeals beyond the scope of Section 1292 and Rule 23(f) are no longer permissible. Just as *Microsoft* found this Court's "voluntary-dismissal tactic" irreconcilable with Rule 23(f), so too the "inextricably-intertwined" doctrine is no longer valid because it was not created by rulemaking, as *Microsoft* requires. The "inextricably intertwined" exception also "subverts . . . the process Congress has established for . . . determining when nonfinal orders may be immediately appealed." *Id.* at 1712-13. Under *Microsoft*, then, a party *must* follow Rule 23(f)'s procedural requirements, and this Court may not "assume[] jurisdiction of [an] appeal challenging" an interlocutory class certification order absent "permission to appeal under Rule 23(f)." *Id.* at 1714.

### 2. Respondents Were Required to Seek Permission to Appeal the District Court's Decertification Order Under Rule 23(f)

In their opposition to Plaintiffs' motion to dismiss, Respondents asserted their appeal falls outside Rule 23(f) because "this is not an appeal of the decertification order," but instead an appeal from the "preliminary injunction order

26

and the procedures attendant to its issuance." ECF 15 at 8. But this description distorts the relevant procedural history. While Respondents have now clarified that the error they assert on appeal is limited to the district court's timing—*i.e.*, its decision not to consider class certification at the time Respondents filed their motion—they styled the motion the district court denied (which they are now appealing) as a motion to "Decertify [The] Class." SER 27. On appeal, Respondents included their objection to the district court's denial of their decertification motion as a separate issue in their "Statement of the Issues." Op. at 3 ("Whether the district court erred by refusing to decide the government's motion for decertification . . . .").

Respondents contend Rule 23(f) does not apply because their challenge goes to the *timing* of when to consider class certification, rather than the *merits* of whether the class still satisfies Rule 23. But it makes no difference whether the district court purportedly "refus[ed] to decide" Respondents' motion to decertify or denied it on the merits. Nothing in Rule 23(f) permits exceptions based on the rationale a district court provides for choosing to maintain certification or the alleged theory for asserting error on appeal. Rule 23(f) speaks only of "order[s] granting or denying class-action certification." Unsurprisingly, this Court treats disputes about orders denying class certification based solely on alleged timing errors as subject to Rule 23(f)'s requirements. *See, e.g.*, *Davidson v. O'Reilly Auto*

*Enterprises. LLC*, 968 F. 3d 955, 958 (9th Cir. 2020) (reviewing denial of class

certification under Rule 23(f) where district court allegedly "abused its discretion

in declining to extend a deadline for filing a motion for class certification"); *ABS*

*Entertainment, Inc. v. CBS Corporation*, 908 F.3d 405, 427 (9th Cir. 2018)

(reviewing denial of class certification as untimely under Rule 23(f)).

    Respondents offer no justification for ignoring Rule 23(f)'s jurisdictional

limits when a district court denies a motion to decertify as premature, as opposed

to denying it on some other ground. Tellingly, Respondents' opposition to the

motion to dismiss cites no cases even suggesting that the scope of Rule 23(f) turns

on whether a challenge is about timing rather than the merits. *See* ECF No. 16 at 8-

9. They cite only *Barnes v. Healy*, 980 F.2d 572, 576 (9th Cir. 1992), a pre-Rule

23(f) decision that, in any event, was not an interlocutory appeal, and *Life Alert*

*Emergency Response, Inc. v. LifeWatch, Inc*., 601 F. App'x 469, 472 (9th Cir.

2015), a case that did not involve a putative class. These cases obviously provide

no reason to disregard published Ninth Circuit precedent and the governing rule

established by the Supreme Court: "[t]o take an immediate appeal from a federal

district court's order granting or denying class certification, a party must first seek

permission from the relevant court of appeals." *Nutraceutical Corp.*, 139 S. Ct. at

713. Because they sought no permission, this Court lacks jurisdiction over that

portion of Respondents' appeal.

In their opposition to the motion to dismiss, Respondents also argued that Rule 23(f) does not apply to "orders denying a motion to decertify a class." ECF No. 15 at 13. This is wrong. Rule 23(f) applies to any challenge to a class certification ruling. *See, e.g.*, *Walker*, 953 F.3d at 636. As Respondents themselves acknowledge, *Lambert* involved a "denied motion for reconsideration of a class certification order" *Id.* (citing *Lambert*). So long as the order at issue is the "functional equivalent" of an order granting (or denying) a motion class certification, Rule 23(f) controls whether an interlocutory appeal is possible. *See* ECF No. 12 at 7 (citing *Microsoft*, 137 S. Ct. at 1711 n.7).

Ultimately, Respondents' argument boils down to an attempt to limit *Lambert* and *Microsoft* to their facts, but their holdings govern. While the particular issue in *Lambert* concerned whether the order there was appealable, the Court's holding—stated in literally the first sentence of the opinion—was unambiguous: "[t]o take an immediate appeal from a federal district court's order granting or denying class certification, a party must first seek permission from the relevant court of appeals." *Lambert,* 139 S. Ct. at 713. Similarly, *Microsoft*'s holding makes clear that courts can no longer indulge extra-textual common law exceptions to the jurisdictional rules governing interlocutory appeals. As the Supreme Court explained, rules "provid[ing] for appellate review of interlocutory orders not covered by statute" *must* "come from rulemaking," "not judicial

29

decisions in particular controversies." *Microsoft*, 137 S. Ct. at 1714. Because

"courts are without authority to make exceptions" to Rule 23(f), *Lambert*, 139 S.

Ct. at 714-15, this Court cannot craft an exception to permit Respondents' appeal.

**B.    The District Court Did Not Commit Reversible Error by Determining the Schedule for Respondents' Decertification Motion**

If this Court nonetheless concludes it has jurisdiction to address the order on

Respondents' motion to decertify, it should find the district court did not abuse its

discretion. District courts enjoy broad discretion over the timing of class

certification motions, including over how much discovery to permit when

considering whether certification remains appropriate. *See Davidson v. O'Reilly*

*Auto Enterprises, LLC*, 968 F.3d 955, 962-63 (9th Cir. 2020); *Vinole v.*

*Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009). If anything, this

Court has recently emphasized that, before undertaking the "rigorous" review

required to resolve class certification, district courts should permit adequate

opportunity for discovery. *ABS Entertainment*, 908 F.3d at 427. Respondents

utterly fail to demonstrate an abuse of discretion where, as here, they sought to

prevent Petitioners from completing agreed-upon discovery by preemptively

moving to decertify.

Respondents argue that the district court violated the Supreme Court's

remand instructions by deferring consideration of their motion to decertify.

Specifically, Respondents argue that the district court "refuse[d] to decide any challenges to class certification until *after* it 'resolv[ed]' the Petitioners' constitutional claims on the merits," thereby violating the Supreme Court's instructions to address class issues "before" the merits. *See* Op. at 15 (emphasis in original). Respondents characterize this aspect of the district court's ruling as "effectively a refusal to consider the [decertification] issue at all." *Id*. at 15; *id*. at 17 (claiming the "district court's refusal to decide any issue related to certification (or decertification) of the class" "prevent[s] the district court from deciding [class issues").[5]

Once again, Respondents mischaracterize the district court's order. The district court nowhere "refused" to consider decertification "at all" or to do so only "after" resolving the merits of Petitioners' constitutional claims. The district court simply stated that "decertification of the class, at this juncture, would move this case backward not forward," ER 8, but made clear it would consider the issue after the parties complete discovery and brief the remaining issues in the case based on a

---

[5] Respondents repeat these characterizations throughout their opening brief. *See id*. at 2 (district court purportedly held "that the government's motion for class decertification could not be decided ahead of 'a final resolution of Petitioners' constitutional claims'"); *id*. at 14 (district court purportedly delayed consideration of class issues until "after a 'final resolution of Petitioners' constitutional claims"); ECF No. 15 at 1 (district court purportedly "refuse[] to consider any merits or class issues ahead of entering final judgment on the constitutional claims") (emphasis added); *id*. at 8 (district court purportedly "determined that the injunction must continue through to a decision on the merits") (emphasis added).

complete factual record. At that point, the district court can and no doubt will decide whether Petitioners can maintain a class "before" turning to the merits of Petitioners' claims. The district court is surely aware of the basic rule that it should first address non-merits issues that have the "potential to resolve the case." Op. at 15. *Cf. Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("Federal courts may not decide questions that cannot affect the rights of litigants in the case before them or give opinion[s] advising what the law would be upon a hypothetical state of facts") (internal quotations and citations omitted). Regardless, Respondents are not entitled to relief based on their conjecture that the district court might commit some hypothetical error in the future.

The district court's decision to defer consideration of decertification is particularly appropriate given *Respondents'* position that "there is no way to separate the class issues from the validity of a classwide injunction." Op. at 22. The gravamen of Respondents' decertification motion is that there are no bright line rules governing when a hearing to consider the need for prolonged detention should occur, and that challenges to prolonged mandatory detention must be brought through individual habeas petitions. *See* SER 28-37.[6] These are the same

---

[6] Respondents' position on the merits cannot be reconciled with this Court's holding that "[w]hen detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound… the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial [and] [t]he burden imposed on the government by

arguments that Respondents advanced before this Court on the *merits* of Petitioners' claims. *See, e.g.*, *Rodriguez V*, ECF No. 212 at 19-27. Given that the parties have agreed that additional discovery is appropriate for the district court to evaluate the parties' claims on the merits, (*see* SER 11-12), it is entirely sensible for the district court to defer consideration of class issues until the parties can present a developed factual record and briefing on both the class issues and their merits claims.

While it is possible that the district court may resolve the case on a non-merits issue such as class certification, it cannot possibly be an "abuse of discretion" for the district court to prefer that all issues be presented together on a complete factual record. *See Preminger v. Peake*, 552 F.3d 757, 769 n.11 (9th Cir. 2008) ("We review for abuse of discretion a district court's decisions concerning its management of litigation."). It is a "well established principle that [d]istrict courts have inherent power to control their dockets." *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (en banc) (internal quotations and citations omitted); *Jorgensen v. Cassiday*, 320 F.3d 906, 913 (9th Cir. 2003) (observing that district courts have "broad discretion in supervising the pretrial phase of

---

requiring hearings before an immigration judge at this stage of the proceedings is therefore a reasonable one." *Diouf v. Napolitano (Diouf II)*, 634 F.3d 1081, 1092-93 (9th Cir. 2011). In light of this holding, it could not be an abuse of discretion to maintain class certification on Petitioners' claim for bond hearings after six months.

litigation") (citation omitted). In particular, district courts are expected to "actively manag[e]" the certification process. *Davidson*, 968 F.3d at 963 (affirming district courts enjoy broad discretion over scheduling in class actions).

While Respondents have a different view than the district court of how it should best manage its docket, they fail to demonstrate that the district court abused its discretion—or committed any other reversible error—by simply deferring consideration of their decertification motion.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request the Court affirm the district court's order maintaining the injunction and deferring consideration of class certification issues.

Respectfully submitted,

ACLU OF SOUTHERN CALIFORNIA

Dated:  December 1, 2020          s/ Michael Kaufman
                                  MICHAEL KAUFMAN
                                  Counsel for Petitioners-Appellees

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32 (a)(7)(C), and Ninth Circuit Rule 32-1, I certify that the attached answering brief is proportionately spaced, has a typeface of 14 points or more, and contains 7,908 words.

Dated:  December 1, 2020          s/ Michael Kaufman
                                  MICHAEL KAUFMAN
                                  Counsel for Petitioners-Appellees