No. 20-55770
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

TIMOTHY ROBBINS, et al.,
Respondents-Appellants,

v.

ALEJANDRO RODRIGUEZ, et al.,
Petitioners-Appellees.
_____

On Appeal from the United States District Court, Central District of California
No. CV 07-3239-TJH (RNB)
_____

**PETITION FOR PANEL REHEARING**
_____

MICHAEL KAUFMAN
mkaufman@aclusocal.org
LIGA CHIA
lchia@aclusocal.org
ACLU Foundation
   of Southern California
1313 West Eighth Street
Los Angeles, CA 90017
Telephone: (213) 977-5232

JUDY RABINOVITZ
jrabinovitz@aclu.org
MICHAEL TAN
mtan@alcu.org
ACLU Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2618
Facsimile: (212) 549-26

AHILAN ARULANANTHAM
arulanantham@law.ucla.edu
UCLA School of Law
Center for Immigration Law and Policy
385 Charles Young Drive East
Los Angeles, CA 90095
Tel:  310-825-1029

JAYASHRI SRIKANTIAH
jsrikantiah@law.stanford.edu
Stanford Law School
Immigrants' Rights Clinic
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: (650) 724-2442
Facsimile: (650) 723-4426

SEAN COMMONS
scommons@sidley.com
ALEXANDRIA RUIZ (SBN 313286)
aruiz@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

AVA GUO
aguo@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................2

    I.     THIS APPEAL PRESENTS QUESTIONS OF EXCEPTIONAL IMPORTANCE ..............................................................................2

    II.    THE PANEL'S HOLDING WARRANTS REHEARING ...................7

          A.    The District Court's Preliminary Injunction Order Rests on Constitutional Foundations that are Undisturbed by the Supreme Court's Statutory Decision ....................................7

          B.    The Permanent Injunction is Required by the Constitution .....10

CONCLUSION………………………………………………………… 14

i

# TABLE OF AUTHORITIES

**Cases**

*Aleman Gonzalez v. Barr*,
   955 F.3d 762 (9th Cir. 2020) ....................................................................... 11, 13

*Casas-Castrillon v. Dep't of Homeland Sec.*,
   535 F.3d 942 (9th Cir. 2008) ............................................................... 3, 8, 10, 12

*Diop v. ICE/Homeland Sec.*,
   656 F.3d 221 (3d Cir. 2011) ................................................................................ 12

*Hernandez v. Sessions*,
   872 F.3d 976 (9th Cir. 2017) ........................................................................ 5, 10

*Jennings v. Rodriguez* (*Rodriguez IV*),
   138 S. Ct. 830 (2018) ......................................................................................... 9, 13

*Lora v. Shanahan*,
   804 F.3d 601 (2d Cir. 2015) ..................................................................... 3, 4, 5, 12

*Ly v. Hansen*,
   351 F.3d 263 (6th Cir. 2003) .............................................................................. 12

*McNeil v. Dir., Patuxent Inst.*,
   407 U.S. 245 (1972) .............................................................................................. 10

*Muniz v. United Parcel Servi., Inc.*,
   738 F.3d 214 (9th Cir. 2013) ................................................................................ 8

*Nadarajah v. Gonzalez*,
   443 F.3d 1069 (9th Cir. 2006) .............................................................................. 4

*Reid v. Donelan*,
   819 F.3d 486 (1st Cir. 2016) ................................................................................ 12

*Rodriguez v. Robbins* ("*Rodriguez II*"),
   715 F.3d 1127 ............................................................................................... 8, 9, 11

*Singh v. Holder*,
   638 F.3d 1196 (9th Cir. 2011) ................................................................... 8, 12, 13

*Sopo v. U.S. Attorney Gen.*,
　825 F.3d 1199 (11th Cir. 2016) ..........................................................................12

*Tijani v. Willis*,
　430 F.3d 1241 (9th Cir. 2005) ..........................................................................11

iii

## INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 40, Petitioners submit this petition for rehearing of the Court's October 15, 2021 memorandum. Dkt. 30-1. In its memorandum, this Court reversed the district court's order denying vacatur of the permanent injunction and remanded with instructions to vacate the injunction. *Id*. at 2. Petitioners respectfully submit that rehearing is warranted because the Court's decision rests on significant errors of law and fact at the heart of this appeal. *See* FRAP 40(a)(2).

While rehearing is warranted, Petitioners believe that this petition is premature and, potentially, unnecessary. The Parties recently submitted a joint motion to extend the deadline for a petition for rehearing by 90 days. *See* Dkt. 33. As set forth in the motion, the Parties are engaged in settlement negotiations that may resolve some or all of the issues in this case, including this appeal. The Parties agree that judicial economy would be best served if the Parties can dedicate their energies to settlement negotiations at this time.

However, the Court has not yet taken any action on the joint motion to extend the deadline, and (absent an extension) the deadline to file a petition for rehearing is today. In an abundance of caution, Petitioners are therefore filing the instant petition prior to the deadline. Nonetheless, Petitioners continue to believe that an extension of the rehearing deadline would best serve the Parties' settlement

negotiations and judicial economy.

Thus, Petitioners' primary request remains that the Court grant the Parties' joint motion, extend the deadline for rehearing by 90 days, and deny this petition without prejudice to Petitioners' ability to re-file for rehearing at a later date, if Petitioners believe it warranted after settlement negotiations complete. However, if this Court is not inclined to grant the joint motion to extend the deadline, Petitioners respectfully request the Court grant rehearing for the reasons stated below.

## ARGUMENT

### I. THIS APPEAL PRESENTS QUESTIONS OF EXCEPTIONAL IMPORTANCE

As this Court has previously recognized, this case involves questions of exceptional importance because it impacts the lives of hundreds of class members at risk of unconstitutionally prolonged incarceration. The profound interests at stake in this appeal, as well as in the Parties' broader settlement negotiations, provide important context for the Parties' joint request for an extension of the deadline for rehearing, as well as support for Petitioners' instant motion.

The record in this case demonstrates the important interests that could be jeopardized were the permanent injunction vacated. Class members subject to prolonged incarceration "frequently have strong ties to this country: Many immigrated to the United States as children, obtained legal permanent resident

status, and lived in this country for as long as twenty years before ICE initiated removal proceedings." *Rodriguez III*, 804 F.3d at 1072; Corrected Supplemental Excerpts of Record at 170-172, *Rodriguez v. Marin*, Nos. 13-56706, 13-56755 (9th Cir. Sept. 1, 2015), ECF 122 (hereinafter SER) (half of *Rodriguez* class members arrived as children or young adults). Often, they "are married to U.S. citizens or lawful permanent residents," "have children who were born in this country," "hold steady jobs . . . to provide for themselves and their families," and "are caregivers for young children, aging parents, and sick or disabled relatives." *Id.*; SER 170-172; *Rodriguez III*, 804 F.3d at 1072 (over 60% of *Rodriguez* class members have US citizen children). Many others are asylum seekers with no criminal history who have presented themselves at our borders to obtain refuge from persecution in their home countries. SER 151:20-24; SER 86-94.

While most detainees' cases typically conclude within a few months, there is no time limit by which the Government must conclude removal proceedings, and no constraints comparable to the speedy trial rules in the criminal context. As a result, some cases can stretch on for prolonged periods. Among class members, incarcerations averaged more than one year, and frequently exceeded two. *Rodriguez III*, 804 F.3d at 1072; Excerpts of Record at 682-83, *Rodriguez v. Marin*, Nos. 13-56706, 13-56755 (9th Cir. Jul. 10, 2014), ECF 11 (hereinafter ER); ER 682-83 (*Rodriguez* class members detained over three and four years); *Casas-*

3

*Castrillon*, 535 F.3d at 945 (seven-year detention); *Nadarajah v. Gonzalez*, 443 F.3d 1069, 1081 (9th Cir. 2006) (nearly five years).

The vast majority of class members subject to prolonged confinement raise substantial defenses to removal that would allow them to remain lawfully present in the country. Most of them raise defenses to removal that would allow them to retain or obtain lawful status in the U.S. Among the *Rodriguez* class, approximately a third won their cases outright, even when litigating from prisons, including nearly 40% of those incarcerated under Section 1226(c) and 65% of those under Section 1225(b) (nearly all of whom are asylum seekers). *Rodriguez III*, 804 F.3d at 1072; ER 721 Tbl.34; ER 730 Tbl.38. In contrast, among a comparable group of *all* immigration detainees (most of whom were held for far shorter periods) only 7% won their cases. ER 692 Tbl.17. Thus, immigrants are incarcerated for prolonged periods because—due to backlogs in the immigration courts and the structure of removal proceedings—litigating meritorious cases takes time. *Rodriguez III*, 804 F.3d at 1072. *See also* Inlender Dec., ER 741-42 ¶¶ 17-23; Castillo Dec., ER 658-59 ¶¶ 3-8; Long Rep. ER 687 (reporting longer detention lengths for studied class members who sought relief).

The success rates of prolonged detainees reflect their long-standing ties to the U.S. and relatively minor criminal histories. Even excluding arriving asylum seekers, "99.9%" of whom have no criminal history, SER 151, among other

individuals many others have "no criminal history whatsoever." *Rodriguez III*, 804 F.3d at 1072; SER 127-28 ¶¶ 7-8. Of those who do, "it is often limited to minor controlled substances offenses," *Rodriguez III*, 804 F.3d at 1072, and a majority received no sentence over six months (and often no incarceration at all). SER 127-28 ¶¶ 7-8. The Government often imprisons non-citizens far longer under civil immigration statutes than it does under criminal statutes.

As this Court previously found, prolonged confinement exacts a severe hardship on immigrants and their families:

> Civil immigration detainees are treated much like criminals serving time: They are typically housed in shared jail cells with no privacy and limited access to larger spaces or the outdoors. Confinement makes it more difficult to retain or meet with legal counsel, and the resources in detention facility law libraries are minimal at best, thereby compounding the challenges of navigating the complexities of immigration law and proceedings. In addition, visitation is restricted and is often no-contact, dramatically disrupting family relationships. While in detention, class members have missed their children's births and their parents' funerals. After losing a vital source of income, class members' spouses have sought government assistance, and their children have dropped out of college.

*Rodriguez III*, 804 F.3d at 1072–73; *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (observing "evidence of subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained").

These harms have been mitigated in part by the District Court's permanent

injunction. However, if the permanent injunction were vacated, Class members would lose the benefits of the injunction: an opportunity to be assessed for release at a bond hearing, gain their physical liberty, and return to their families and other loved ones. Absent the permanent injunction, many Class members would remain detained for months and years, even though they present no danger or flight risk warranting their detention.

This Court's memorandum suggests that Petitioners should ameliorate those potential harms by moving for a preliminary injunction on remand, (Dkt. 30-1 at 3), but class members would remain locked up without a bond hearing while the district court considers whether to issue such relief. This motions practice would also likely prolong district court proceedings and a final judgment in the case.

Moreover, vacatur of the extant injunction would also impact the Parties' ability to negotiate a settlement in this case. Settlement negotiations in a case of this complexity and magnitude will take time. Petitioners currently are able to afford sufficient time for the settlement process because the class currently enjoys the benefits of the permanent injunction. Were the permanent injunction to be vacated, Petitioners will have to dedicate their energies to securing preliminary relief (or expediting the case schedule to obtain permanent relief), rather than engaging in the settlement process. Defendants in turn may forego settlement negotiations if Petitioners proceed with litigation in district court. Indeed, it is for

these reasons that the Parties jointly agreed that a stay of the rehearing deadline would aid their ongoing settlement negotiations. *See* Dkt. 31, 33.

## II. THE PANEL'S HOLDING WARRANTS REHEARING

Petitioners also respectfully submit that this Court's memorandum warrants rehearing because it rests on significant factual and legal errors. *See* FRAP 40(a)(2). Specifically, this Court overlooked that the District Court's permanent injunction rested on constitutional *and* statutory grounds. The Supreme Court's rejection of the statutory basis for the permanent injunction therefore provides no basis for vacatur because it undermines only one of the *two* legal bases for the injunction. While the District Court may consider the issues posed by the Supreme Court and this Court in the remand orders, the constitutional foundations of the permanent injunction already provide ample basis for maintaining the injunction while it considers those issues.

### A. The District Court's Preliminary Injunction Order Rests on Constitutional Foundations that are Undisturbed by the Supreme Court's Statutory Decision

This Court held that the permanent injunction should be vacated because Petitioners "lost on the merits of their statutory claims, eliminating the entire foundation for the permanent injunction and subsequent relief . . . ." Dkt. 30-1 at 3. However, the Court's decision overlooks the existence of an independent basis for affirmance of the District Court's order—the Constitution. Petitioners have

7

continuously advanced two independent grounds for the injunction—one statutory and the other constitutional. Here, the District Court's reasoning heavily relied on constitutional considerations and drew upon case law that contains extensive constitutional analysis that supports the District Court's conclusion that bond hearings are "constitutionally obligated." *See* C.D. Cal. Dkt. 353 at 3 (citing *Rodriguez v. Robbins ("Rodriguez II")*, 715 F.3d 1127 (9th Cir. 2013); *Singh v. Holder*, 638 F.3d 1196, 1203-10 (9th Cir. 2011); *Casas–Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008)).

Under settled law, this Court "may affirm on any basis supported by the record, whether or not relied upon by the strict court[,] . . . even if the district court relied on the wrong grounds or wrong reasoning." *Muniz v. United Parcel Servi., Inc.*, 738 F.3d 214, 2019 (9th Cir. 2013) (internal citations and quotations omitted). Here, the District Court found that the permanent injunction was "constitutionally obligated." *See* C.D. Cal. Dkt. 353 at 3. Petitioners respectfully submit that this Court erred by not considering this independent, constitutional basis that supports maintaining the injunction during the pendency of further proceedings in the district court.

The permanent injunction's constitutional foundations are supported by the fact that this Court, and apparently the Supreme Court, found merit to Petitioners' constitutional claims, even when it ultimately declined to reach them. The

Supreme Court asked for separate briefing on the constitutional grounds and heard re-argument, but ultimately left it to this Court to address those grounds in the first instance. In doing so, the Supreme Court recognized the continued viability of the constitutional claims by remanding with instructions for this Court to consider them. *Jennings v. Rodriguez* (*Rodriguez IV*), 138 S. Ct. 830, 851 (2018) (observing the Supreme Court had "no occasion to consider [Petitioners'] constitutional arguments on their merits" and remanding for this Court "to consider them in the first instance"). At no time during the Supreme Court briefing (or at any prior point in this lengthy litigation) have Respondents argued that Petitioners did not adequately preserve the constitutional grounds for affirmance.

Equitable considerations also tip sharply against vacatur. Without the injunction, class members would again be subject to prolonged imprisonment without a hearing, at severe emotional and financial cost to themselves and their families. *Rodriguez II*, 715 F.3d at 1145 (recognizing "major hardship posed by needless prolonged detention"). In contrast, the harms faced by Respondents are significantly smaller, especially when considering an injunction which has been in effect for almost a decade. The injunction only requires Respondents to provide hearings at which class members are considered for release. It permits continued detention where the government demonstrates that a class member presents a danger or flight risk. *Id*. at 1145-46.

## B. The Permanent Injunction is Required by the Constitution

The Constitution requires the relief the injunction provides. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "In the context of immigration detention, it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (internal citations and quotations omitted); *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008) (same, in challenge to prolonged detention pending removal proceedings).

Where confinement becomes prolonged, due process requires enhanced protections to ensure detention remains reasonable in relation to its purpose. *Zadvydas*, 533 U.S. at 701 ("for detention to remain reasonable," greater justification needed "as the period of . . . confinement grows"); *McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249 (1972) ("If the commitment is properly regarded as a short-term confinement with a limited purpose . . . then lesser safeguards may be appropriate, but . . . the duration of the confinement must be strictly limited"); *Diouf II*, 634 F.3d at 1085 ("greater procedural safeguards" required when

10

detention prolonged).

This Court's case law already establishes that due process requires a bond hearing where incarceration exceeds six months. In *Diouf II*, this Court held that "[w]hen detention crosses the six month threshold and release or removal is not imminent, the private interests at stake are profound. Furthermore, the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial. The burden imposed on the government by requiring hearings before an immigration judge at this stage of the proceedings is therefore a reasonable one." 634 F.3d at 1091-92; *Rodriguez II*, 715 F.3d at 1139 ("*Diouf II* strongly suggested that immigration detention becomes prolonged at the six-month mark regardless of the authorizing statute."). *See also Aleman Gonzalez*, 955 F.3d at 772 (the Ninth Circuit has recognized "'that detention always becomes prolonged at six months,'" "'consistent with the reasoning of *Zadvydas*, *Demore*, *Casas*[*-Castrillon*], and *Diouf II*[.]'") (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1139 (9th Cir. 2013)).

For more than a decade, this Court has repeatedly applied these constitutional guideposts to immigration detention cases. Each time, this Court has found prolonged imprisonment without a hearing before a neutral decisionmaker constitutionally "doubtful." *See Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) (Section 1226(c)) (citing *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996));

11

*Casas*, 535 F.3d at 950 (same, based on due process principles in *Zadvydas*); *Diouf II*, 634 F.3d at 1087 (same, for detention under Section 1231(a)(6), because "[r]egardless of the stage of the proceedings, the same important interest is at stake—freedom from prolonged detention."); *Singh v. Holder*, 638 F.3d 1196, 1204 (9th Cir. 2011) (due process requires government to prove danger and flight risk by clear and convincing evidence) (citing, *inter alia*, *Addington v. Texas*, 441 U.S. 418(1979), *Foucha*, *Cooper*, and *Santosky v. Kramer*, 455 U.S. 745 (1982)).

Every circuit to address the issue likewise has found prolonged mandatory detention under Section 1226(c) presents serious due process concerns. Like this Court, four of them construed immigration detention statutes to avoid serious constitutional problems. *Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1214 (11th Cir. 2016); *Reid v. Donelan*, 819 F.3d 486, 499 (1st Cir. 2016); *Lora v. Shanahan*, 804 F.3d 601, 614 (2d Cir. 2015); *Ly v. Hansen*, 351 F.3d 263, 267 (6th Cir. 2003) (requiring release when mandatory detention exceeds a reasonable period of time). The Third Circuit held prolonged immigration incarceration without a bond hearing violates the Due Process Clause. *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011) (lengthy detention without hearing "a violation of the Due Process Clause").

The Constitution also requires, and this Court's prior case law has established, that in prolonged detention bond hearings, the government must bear

12

the burden of proof by clear and convincing evidence. *Singh*, 638 F.3d at 1200. *Singh* found that "*due process* places a heightened burden of proof on the State in civil proceedings in which the 'individual interests at stake ... are both particularly important and more substantial than mere loss of money.'" *Id.* at 1204 (emphasis added) (citing *Addington v. Texas*, 441 U.S. 418 (1979); *Cooper v. Oklahoma*, 517 U.S. 348 (1996); *Foucha v. Louisiana*, 504 U.S. 71 (1992); *Santosky v. Kramer*, 455 U.S. 745 (1982); *Woodby v. INS*, 385 U.S. 276 (1966)). *See also id.* (observing that the Supreme Court "'repeatedly has recognized that civil commitment for *any* purpose constitutes a significant deprivation of liberty'") (quoting *Addington*, 441 U.S. at 425) (emphasis in original). In *Rodriguez IV*, the Supreme Court found the text of Section 1226(a) could not be construed to require the Government to bear the burden of proof by clear and convincing evidence at a bond hearing. *Rodriguez IV*, 138 S. Ct. at 847–48 ("Nothing in § 1226(a)'s text" authorizes the injunction's bond hearing requirements). However, as this Court recently recognized, *Rodriguez IV* does not affect the continued validity of *Singh*'s constitutional holding. *Aleman Gonzalez v. Barr*, 955 F.3d 762, 766 (9th Cir. 2020) (holding that *Jennings* does not "undercut our constitutional due process holding in *Singh*").

Accordingly, due process requires the injunction's provisions ordering constitutionally adequate bond hearings after six months of incarceration for all Class members.

## CONCLUSION

For these reasons, the Court should grant the Parties' joint motion to extend the petition for rehearing deadline, extend the deadline for rehearing by 90 days, and deny this Petition without prejudice to Petitioners' ability to re-file for rehearing if Petitioners believe it warranted after the conclusion of settlement negotiations. However, if the Court is not inclined to grant that motion, it should grant this petition for rehearing.

                                                Respectfully submitted

Dated: March 3, 2022                s/ Michael Kaufman
                                                MICHAEL KAUFMAN
                                                Counsel for Petitioners-Appellees