No. 20-55770

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

TIMOTHY ROBBINS, *et al.*,
Respondents-Appellants,

v.

ALEJANDRO RODRIGUEZ, *et al.*,
Petitioners-Appellees.

---

On Appeal from the United States District Court, Central District of California
No. CV 07-3239-TJH (RNB)

---

# PETITIONERS' MOTION TO STAY PROCEEDINGS OR, ALTERNATIVELY, PETITION FOR PANEL REHEARING

---

AHILAN ARULANANTHAM
arulanantham@law.ucla.edu
VANESSA YOUNG
youngviniegra@law.ucla.edu
(application for admission forthcoming)
UCLA School of Law
Miñana Family Center for
Immigration Law and Policy
385 Charles E. Young Drive East
Los Angeles, CA 90095
Telephone: 310-825-1029

STEPHANIE PADILLA
spadilla@aclusocal.org
ACLU Foundation of Southern California
P.O. Box 811370
Los Angeles, CA 90081
Telephone: (213) 977-9500

JUDY RABINOVITZ
jrabinovitz@aclu.org
ACLU Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2618
Facsimile: (212) 549-2652

JAYASHRI SRIKANTIAH
jsrikantiah@law.stanford.edu
Stanford Law School
Immigrants' Rights Clinic
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: (650) 724-2442
Facsimile: (650) 723-4426

SEAN COMMONS
scommons@sidley.com
ALEXANDRIA RUIZ
aruiz@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

# TABLE OF CONTENTS

**Page No.**

INTRODUCTION ... 1
RELEVANT PROCEDURAL HISTORY ... 2
ARGUMENT ... 4
I. The Court should stay proceedings pending the Supreme Court's resolution of *Genalo v. D.C.* ... 5
II. Alternatively, this Court should grant rehearing, order updated briefing, and then decide the merits. ... 7
  A. This appeal presents questions of exceptional importance that warrant rehearing. ... 8
  B. The panel's holding warrants rehearing because it could affirm the injunction on constitutional grounds. ... 13
CONCLUSION ... 15
CERTIFICATE OF COMPLIANCE ... 1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banyee v. Garland*,
115 F.4th 928 (8th Cir. 2024) ....................................................................3

*Black v. Decker*,
103 F.4th 133 (2d Cir. 2024) ..............................................................3, 4, 6

*Casas-Castrillon v. DHS*,
535 F.3d 942 (9th Cir. 2008) ....................................................................9

*Diouf v. Napolitano (Diouf II)*,
634 F.3d 1081 (9th Cir. 2011) ..............................................................11, 13

*Doe v. Becerra*,
787 F. Supp. 3d 1083 (E.D. Ca. 2025) .......................................................9

*German Santos v. Warden Pike County Correctional Facilities*,
965 F.3d 203 (3d Cir. 2020) ......................................................................3

*In re Google Play Store Antitrust Litig.*,
152 F.4th 1078 (9th Cir. 2025) ..................................................................7

*Henry v. Ryan*,
766 F.3d 1059 (9th Cir. 2014) ................................................................6, 7

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017) ....................................................................10

*Hernandez-Lara v. Lyons*,
10 F.4th 19 (1st Cir. 2021) .........................................................................3

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) .....................................................................2, 11, 13, 15

*L.T. v. ICE*,
No. 5:26-CV-00322, 2026 WL 2338452 (C.D. Cal. Aug. 12, 2026) .................10

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .....................................................................................7

*Lopez-Campos v. Raycraft*,
175 F.4th 713 (6th Cir. 2026) ....................................................................9

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) ....................................................................13

*Muñiz v. UPS, Inc.*,
738 F.3d 214 (9th Cir. 2013) ....................................................................14

*Nadarajah v. Gonzalez*,
443 F.3d 1069 (9th Cir. 2006) ....................................................................9

*Padilla v. ICE*,
No. 24-2801, 2026 WL 2822044 (9th Cir. Sept. 21, 2026)...............................12

*Poyson v. Ryan*,
879 F.3d 875 (9th Cir. 2018) ....................................................................5, 6, 7

*Poyson v. Ryan*,
No. 10-99005, Dkt. 79 (9th Cir. Apr. 2, 2014)....................................................6

*Reyes v. Beto*,
349 F.2d 403 (5th Cir. 1965) ....................................................................7

*Rodriguez Diaz v. Garland*,
53 F.4th 1189 (9th Cir. 2022) ....................................................................11, 12

*Rodriguez Diaz v. Garland*,
83 F.4th 1177 (9th Cir. 2023) ....................................................................1, 8, 12, 13

*Rodriguez v. Marin* (*Rodriguez IV*),
909 F.3d 252 (9th Cir. 2018) ....................................................................*passim*

*Rodriguez v. Robbins* (*Rodriguez II*),
715 F.3d 1127 (9th Cir. 2013) ....................................................................2, 15

*Rodriguez v. Robbins* (*Rodriguez III*),
804 F.3d 1060 (9th Cir. 2015) ....................................................................2, 8, 9, 10

*Singh v. Holder*,
638 F.3d 1196 (9th Cir. 2011) ....................................................................11, 12, 13

*United States v. Orona*,
987 F.3d 892 (9th Cir. 2021) ....................................................................6

*Velasco Lopez v. Decker*,
978 F.3d 842 (2d Cir. 2020) ....................................................................3

**Statutes and Rules**

8 U.S.C. § 1225(b)(1)(B)(ii) ........................................................................12

Fed. R. App. P. 27 ....................................................................................1

Fed. R. App. P. 40 ....................................................................................1

Fed. R. App. P. 40(b) ...............................................................................13

Fed. R. App. P. 40(e) .................................................................................7

Fed. R. App. P. 41(b) .................................................................................7

Fed. R. App. P. 41(d) .................................................................................7

**Other Authorities**

*Genalo v. Black*,
No. 25-886 (U.S. June 15, 2026) ........................................................3, 4

*Genalo v. D.C.*,
No. 26-379 (U.S. Sept. 21, 2026) ...............................................*passim*

*Jennings v. Rodriguez*,
No. 15-1204 (U.S. Jan. 31, 2017) ............................................................15

*Jules v. Rhoney*,
No. 26-1559, Dkt. 40.1 (2d Cir. Sept. 22, 2026) .......................................4

## INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 27, Petitioners respectfully request a stay pending resolution of the petition for certiorari in *Genalo v. D.C.*, No. 26-379.[1] This Court should stay further proceedings and require the parties to submit a joint status report thirty days after the Supreme Court renders a decision in *D.C.*, or, if certiorari is denied, thirty days after the denial.

A stay is warranted because the Supreme Court will soon decide the core constitutional issue here: namely, whether the Fifth Amendment requires that individuals subject to prolonged mandatory detention receive a bond hearing where the government bears the burden to show further detention is justified based on danger or flight risk. *See* Pet. Cert. at I, *Genalo v. D.C.*, No. 26-379 (U.S. Sept. 21, 2026). To preserve the resources of this Court, the district court, and the parties, this Court should stay proceedings until the Supreme Court rules.

Alternatively, Petitioners respectfully request rehearing of the Court's October 19, 2021, Memorandum, Dkt. 30-1. Fed. R. App. P. 40. This case presents a constitutional question of exceptional importance. The *Rodriguez* injunction protects a large number of immigrants—now numbering at least hundreds a month—against arbitrary, prolonged detention. Petitioners submit that the injunction can and should be affirmed on purely constitutional grounds.

[1] The government opposes any stay or abeyance.

## **RELEVANT PROCEDURAL HISTORY**[2]

Petitioners challenge prolonged detention without rigorous individualized bond hearings consistent with the Due Process Clause.[3] The district court issued a preliminary injunction in 2012, SER 73, which this Court affirmed. *Rodriguez v. Robbins* (*Rodriguez II*), 715 F.3d 1127 (9th Cir. 2013). The district court entered a permanent injunction in 2013, SER 67, which this Court also largely affirmed. *Rodriguez v. Robbins* (*Rodriguez III*), 804 F.3d 1060 (9th Cir. 2015). The Supreme Court reversed in *Jennings v. Rodriguez*, 583 U.S. 281 (2018) on statutory grounds. It, however, declined to vacate the injunction and remanded for this Court to "consider [Petitioners'] constitutional arguments" "in the first instance." *Id.* at 312. This Court then remanded to the district court, expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin* (*Rodriguez IV*), 909 F.3d 252, 256 (9th Cir. 2018).

On remand, the district court denied a motion to vacate the injunction and decertify the class, as well as a motion for reconsideration, ER 143–47 (C.D. Cal. Dkt. 533 & 550), preserving the injunction. ER 4–8. The government appealed,

---

[2] A more thorough summary of the procedural history can be found in Petitioners' Answering Brief. Dkt. 18 at 3–9.

[3] The operative complaint (Fourth Amended Complaint) is located at ER 20–55.

and this Court issued the Memorandum, reversing and remanding with instructions to vacate the injunction. Dkt. 30-1. This Court did so on the premise that the Supreme Court's ruling "on the merits of their statutory claims" had "eliminat[ed] the entire foundation for the permanent injunction and subsequent relief." *Id.* at 3.

Before the mandate issued, the parties began settlement negotiations. While the details are confidential, what matters for present purposes is that, for nearly five years, the parties agreed that judicial economy favored a stay, first for negotiations and then because the Supreme Court appeared likely to resolve the constitutional question.[4] In keeping with that shared view, the parties repeatedly filed joint motions to extend the deadline for panel rehearing or rehearing en banc.[5]

The most recent round of parallel litigation arose from the Second Circuit. Earlier this year, the Supreme Court granted the government's petition for certiorari in *Genalo v. Black*, No. 25-886 (U.S. June 15, 2026). The core question presented in *Black* was the same one here: "Whether there is a point at which an alien's detention under Section 1226(c), pending a decision on whether he is to be removed, becomes 'unreasonably prolonged,' such that due process requires a

[4] Pertinent cases included *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024) (due process bars prolonged detention under § 1226(c) without bond hearing); *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024) (no temporal limits on prolonged detention); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021) (additional bond hearing required after prolonged detention under § 1226(a)); *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) (same); and *German Santos v. Warden Pike County Correctional Facilities*, 965 F.3d 203 (3d Cir. 2020) (same as *Black*).
[5] *See* Dkts. 31–83.

bond hearing." Pet. Cert. at I, *Genalo v. Black*, No. 25-886 (U.S. Jan. 22, 2026). *Black* was scheduled for argument in October 2026, but after the petitioner was pardoned the case became moot. *See* Letter from Solicitor General to Clerk, *Genalo v. Black*, No. 25-886 (U.S. Sept. 11, 2026).

The Solicitor General stipulated to dismissal "with the aim of identifying alternative vehicles, including from the Second Circuit, that would still allow this Court to resolve the questions presented during October Term 2026." *Id.* And the government declined to seek *Munsingwear* vacatur of the Second Circuit's opinion because "it would risk delaying other similar cases from reaching this Court." *Id.*

A few days later, on September 21, 2026, the government sought certiorari in *Genalo v. D.C.*, No. 26-379, which again raises the same constitutional question. *See* Pet. Cert. at I, *Genalo v. D.C.*, No. 26-379.[6] The government has also moved for summary affirmance in at least one other Second Circuit case, requesting that the Court "conserve judicial resources and expedite the resolution of th[e] appeal by summarily affirming the district court's decision" to facilitate "review by the Supreme Court." *Jules v. Rhoney*, No. 26-1559, Dkt. 40.1 (2d Cir. Sept. 22, 2026).

## ARGUMENT

To conserve judicial resources, this Court should stay proceedings. That was the view of both parties for the last five years. Yet, despite the fact that the

[6] The brief in opposition is due December 8, 2026.

Supreme Court is poised to resolve the constitutional question at the heart of this case, the government has now changed positions. It apparently wishes to relitigate in district court the same constitutional questions the Supreme Court is considering, presumably in hopes of avoiding compliance with a decade-old injunction for a few additional months. This Court should reject that view and stay proceedings because the Supreme Court will shortly answer the core constitutional question driving this litigation. *See infra* Section I.

Alternatively, if this Court is disinclined to wait for the Supreme Court, it should grant rehearing, request updated briefing, and then decide the core constitutional issues for itself. It has all the evidence needed to rule on those issues. This Court should not dissolve the injunction and send the case back to the district court, as doing so would needlessly subject class members to prolonged arbitrary detention, contrary to this Court's precedent. *See infra* Section II.

## I. The Court should stay proceedings pending the Supreme Court's resolution of *Genalo v. D.C.*

Given the important interests at stake and the likelihood that the Supreme Court will decide the core legal questions soon, judicial economy would be best served by staying proceedings in this case pending the Supreme Court's resolution of *Genalo v. D.C.*, No. 26-379.

This Court has authority to stay this case while awaiting the Supreme Court's ruling. This Court did exactly that to conserve judicial resources in *Poyson*

*v. Ryan,* 879 F.3d 875, 886–87 (9th Cir. 2018). There, this Court stayed proceedings on a petition for panel rehearing and the mandate, pending en banc proceedings in a related Ninth Circuit case, and subsequently extended its stay pending resolution of a petition for certiorari filed in that same related case. *Id.*[7]

This case involves a virtually indistinguishable procedural posture: Supreme Court proceedings in *Genalo v. D.C.* are likely to resolve the core constitutional question in this case. Indeed, the argument for staying proceedings here is stronger than in *Poyson* because the Supreme Court already granted certiorari on the same constitutional question in *Black*, and since *Black* was dismissed the government has moved quickly to petition for certiorari in *D.C.* and identify other vehicles through which to obtain review on the same question *this term*. Because the Supreme Court is highly likely to grant certiorari in *D.C.* in the near future on the core issue in this case, a stay is plainly warranted. *See also United States v. Orona*, 987 F.3d 892, 893 (9th Cir. 2021) (noting court previously stayed en banc proceedings pending Supreme Court decision in related case); *Henry v. Ryan*, 766 F.3d 1059, 1060–67 (9th Cir. 2014) (Fletcher, J., concurring) (noting court previously stayed proceedings pending en banc review in related cases, and

[7] *See also Poyson v. Ryan*, No. 10-99005, Dkt. 79 (9th Cir. Apr. 2, 2014) (after denial of rehearing en banc, panel rehearing petition remained pending, and panel stayed proceedings on the petition pending resolution of en banc proceedings in related case); *id.* at Dkt. 85 (9th Cir. May 13, 2016) (extending stay of proceedings pending resolution of petition for certiorari in the related case).

explaining it may do so "for a reason independent of [a] petition for certiorari," such as en banc proceedings); *Reyes v. Beto*, 349 F.2d 403, 403 (5th Cir. 1965) (recalling mandate and staying issuance pending resolution of certiorari petition in related case that raised "the same issue").[8]

## II. Alternatively, this Court should grant rehearing, order updated briefing, and then decide the merits.

If this Court denies Petitioners' stay motion, it should grant rehearing, order updated briefing on the constitutional question, and then decide the merits. *See* Fed. R. App. P. 40(e)(2). Rehearing is appropriate for two reasons: (1) this appeal presents questions of exceptional importance; and (2) this Court's Memorandum does not address whether the injunction can survive on purely constitutional grounds. While this Court could remand for the district court to address those questions, doing so would force Petitioners to present the same constitutional questions to the district court while class members face prolonged arbitrary detention. Instead, this Court should decide them now—while the injunction

[8] Authority to issue such stays derives from Federal Rule of Appellate Procedure 41(b) (permitting the Court to "shorten or extend the time" to issue the mandate) and also from "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The principles underlying application of Federal Rule of Appellate Procedure 41(d) also support stays in this context. This Court "often" issues stays pending certiorari under that Rule. *In re Google Play Store Antitrust Litig.*, 152 F.4th 1078, 1081 (9th Cir. 2025). *Poyson* did not apply Rule 41(d) and is instead best read to have drawn on this Court's authority under Rule 41(b) and its inherent authority. *See Henry*, 766 F.3d at 1060–67 (Fletcher, J., concurring).

remains in place—rather than dissolving it and allowing thousands of immigrants to become subject to prolonged arbitrary detention in violation of this Court's case law.

### *A. This appeal presents questions of exceptional importance that warrant rehearing.*

As this Court has previously recognized, this case involves questions of exceptional importance because it impacts the lives of at least hundreds of class members at risk of unconstitutionally prolonged imprisonment.

The extensive record in this case demonstrates the important interests that would be jeopardized were the permanent injunction vacated. Class members subject to prolonged incarceration "frequently have strong ties to this country: Many immigrated to the United States as children, obtained legal permanent resident status, and lived in this country for as long as twenty years before ICE initiated removal proceedings." *Rodriguez III*, 804 F.3d at 1072; *see also* Corrected Supplemental Excerpts of Record at 170–172, *Rodriguez IV*, Nos. 13-56706, 13-56755, Dkt. 122 (9th Cir. Sept. 1, 2015) (hereinafter *Rodriguez IV* SER) (half of *Rodriguez* class members arrived as children or young adults). Often, they "are married to U.S. citizens or lawful permanent residents," "have children who were born in this country," "hold steady jobs . . . to provide for themselves and their families," and "are caregivers for young children, aging parents, and sick or disabled relatives." *Rodriguez III*, 804 F.3d at 1072; *see also Rodriguez IV* SER

170–172 (over half of *Rodriguez* class members have U.S. citizen children). Many others are asylum seekers with no criminal history who have presented themselves at our borders to obtain refuge from persecution in their home countries. *Rodriguez IV* SER 151:20-24, 86–94.[9]

The record also shows that class members were subject to prolonged arbitrary detention prior to the injunction. They were detained on average for more than one year, and frequently more than two. *Rodriguez III*, 804 F.3d at 1072; Excerpts of Record at 682–83, *Rodriguez IV*, Nos. 13-56706, 13-56755, Dkt. 11 (9th Cir. Jul. 10, 2014) (hereinafter *Rodriguez IV* ER); *see also Casas-Castrillon v. DHS*, 535 F.3d 942, 945 (9th Cir. 2008) (seven-year detention); *Nadarajah v. Gonzalez*, 443 F.3d 1069, 1081 (9th Cir. 2006) (nearly five years).

The vast majority of class members subject to prolonged confinement raised substantial defenses to removal that would allow them to remain lawfully present in the country. Approximately a third won their cases outright, even when

[9] Although the data on which the record is built is dated, there is no reason to believe it would be different if rebuilt today, based on current immigration enforcement patterns. *See, e.g.*, *Lopez-Campos v. Raycraft*, 175 F.4th 713, 734–35 (6th Cir. 2026) (in case involving due process challenge to mandatory detention, noting “Petitioners have lived in the United States for years or decades. Some . . . own property or work for locally owned businesses. . . . Many are the primary breadwinners or essential caregivers for their families, which include their children who were born here and are citizens of the United States”); *Doe v. Becerra*, 787 F. Supp. 3d 1083 (E.D. Ca. 2025) (preliminarily enjoining detention without bond hearing for asylum-seeker who had been previously released and lived here for five years with virtually no criminal history).

litigating from detention. *Rodriguez III*, 804 F.3d at 1072; *Rodriguez IV* ER 721 Tbl. 34 & ER 730 Tbl. 38.[10] In contrast, among a comparable group of *all* immigration detainees (most of whom were held for far shorter periods) only 7% won their cases. *Rodriguez IV* ER 692 Tbl. 17. Thus, immigrants are often incarcerated for prolonged periods because litigating meritorious cases takes time. *Rodriguez III*, 804 F.3d at 1072; *Rodriguez IV* ER 687–88 Tbl. 11, Tbl. 12 (reporting longer detention lengths for class members who sought relief).

As this Court previously found, prolonged confinement exacts severe hardship on class members' families. *Rodriguez III*, 804 F.3d at 1072–73 (describing hardships); *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (observing "subpar medical" care, "economic burdens" on families, and "collateral harms to children of detainees whose parents are detained").[11]

For the last decade, the permanent injunction has worked to mitigate these harms. If it were vacated, many class members would again be imprisoned for years even though they present no danger or flight risk.

This Court's Memorandum suggests Petitioners should move on remand for a preliminary injunction on constitutional grounds, Dkt. 30-1 at 3; Petitioners

[10] The government does not currently make publicly available information that would allow Petitioners to update this data.

[11] *See also L.T. v. ICE*, No. 5:26-CV-00322, 2026 WL 2338452, at *5–*9, *16–*19 (C.D. Cal. Aug. 12, 2026) (detailing government's continued inability to provide medical care and sanitary conditions at Adelanto, the primary detention facility at issue).

respectfully suggest that is not the appropriate disposition of this appeal. Most importantly, it would subject class members to prolonged arbitrary detention while the district court considers whether to issue such relief. Moreover, it is not required by the Supreme Court's remand, which directed *this Court* to consider the constitutional questions. *See Jennings*, 583 U.S. at 312 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits. . . .[W]e remand the case to the Court of Appeals to consider them in the first instance.").

In addition, this Court's prolonged detention case law already provides the answer to the relevant constitutional questions in the vast majority of class members' cases. Under extant precedent, people held for more than six months without a bond hearing must receive one on due process grounds. As this Court held in *Diouf v. Napolitano (Diouf II)*,

> [w]hen detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound. Furthermore, the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial. The burden imposed on the government by requiring hearings before an immigration judge at this stage of the proceedings is therefore a reasonable one.

634 F.3d 1081, 1091–92 (9th Cir. 2011). This Court subsequently held, again on constitutional grounds, that in such cases the government must bear the burden of proof by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203–10

(9th Cir. 2011); *cf. Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022) (describing *Singh*'s holding as "based . . . on general principles of procedural due process, reasoning that a detained person's liberty interest is substantial").

Petitioners recognize that this Court has issued several other decisions in the last few years that may be relevant to resolving the constitutional issues now before it. In *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), it held that due process did not require an *additional* bond hearing for individuals facing prolonged detention after they received an initial bond hearing at the outset of detention. *See also id.* at 1223 (9th Cir. 2022) (Wardlaw, J., dissenting) (noting the majority "disregards key language throughout our past decisions that provides guidance on how best to apply the *Mathews* factors"); *Rodriguez Diaz v. Garland*, 83 F.4th 1177, 1178 (9th Cir. 2023) (Paez, J., respecting denial of rehearing en banc) (recognizing *Singh* "concluded that noncitizens whose detention becomes prolonged are constitutionally entitled to such a bond hearing").

More recently, this Court held that a class of asylum seekers who passed credible fear interviews and remained detained under 8 U.S.C. § 1225(b)(1)(B)(ii) could "pursue constitutional due process claims regarding bond hearings" because "[n]oncitizens who arrive illegally and are found away from the border well after arrival are protected from arbitrary detention in violation of the Due Process Clause." *Padilla v. ICE*, No. 24-2801, 2026 WL 2822044, at *10, *19 (9th Cir. Sept. 21, 2026). The parties can discuss the relevance of these and any other post-

2018 cases through updated briefing.[12]

In short, if this Court is not inclined to wait for the Supreme Court, it can resolve the constitutional issues without lifting the injunction for an extended period, preventing severe violations of class members' constitutional rights.

### ***B. The panel's holding warrants rehearing because it could affirm the injunction on constitutional grounds.***

Petitioners also respectfully submit that this Court's Memorandum warrants rehearing insofar as this Court overlooked that the district court's permanent injunction rested on statutory *and* constitutional grounds, and could be independently affirmed based solely on the latter. *See* Fed. R. App. P. 40(b). This Court apparently concluded otherwise in its Memorandum, stating that Petitioners' loss "on the merits of their statutory claims, eliminat[ed] the entire foundation for the permanent injunction." Dkt. 30-1 at 3. However, the Supreme Court's rejection of the *statutory* basis for the injunction does not require vacatur, because the Constitution provides a distinct legal basis on which the injunction can and already does rest.

---

[12] Even though *Rodriguez Diaz* acknowledged both that *Singh* and *Diouf II* rest on constitutional grounds, and that the Supreme Court did not address the constitutional questions in *Jennings*, *Rodriguez Diaz* nonetheless suggested that *Singh* and *Diouf II* might no longer be good law. *Rodriguez Diaz*, 53 F.4th at 1200–02. However, it then stated that it was not deciding whether those cases remain good law. *Id.* Its attempt to cast doubt on this Court's prior constitutional rulings is dicta, and in any event could not authorize this panel to disregard earlier panel decisions of this Court. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003).

When the district court issued the permanent injunction, it concluded that "the government is *constitutionally* obligated to provide [bond] hearings." SER 70 (emphasis added). The district court's reasoning relied heavily on this Court's constitutional case law. SER 69 (citing *Singh v. Holder*, 638 F.3d at 1203–10). This Court reached a similar conclusion in *Rodriguez IV*, acknowledging "grave doubts that any statute that allows for arbitrary prolonged detention without any process is *constitutional*." 909 F.3d at 256 (emphasis added). Because the district court found the injunction was "constitutionally obligated," SER 70, Petitioners respectfully submit this Court should address whether this independent, constitutional basis supports the injunction.

Moreover, this Court "may affirm on any basis supported by the record, whether or not relied upon by the district court[,] . . . even if the district court relied on the wrong grounds or wrong reasoning." *Muñiz v. UPS, Inc.*, 738 F.3d 214, 219 (9th Cir. 2013) (internal citations and quotations omitted). Thus, even if the district court had based the injunction solely on statutory grounds, this Court could still affirm on constitutional grounds. Given that the parties have repeatedly briefed the constitutional issues before the district court, this Court, and the Supreme Court, returning this case to the district court now for the parties to relitigate the constitutional question would be an inefficient use of judicial resources.[13]

[13] The parties briefed the constitutional question before this Court in 2013, *Rodriguez v. Robbins*, 13-56706, Dkts. 167 & 174, and then before the Supreme

Finally, equitable considerations tip sharply against vacatur. As described above, without the injunction class members would again be subject to prolonged arbitrary confinement, at severe emotional and financial cost to themselves and their families. *Rodriguez II*, 715 F.3d at 1145 (recognizing "major hardship posed by needless prolonged detention"). In contrast, the harms faced by Respondents should the injunction remain in place while this Court addresses the constitutional issues are minimal. The injunction has been in effect for more than a decade, and only requires Respondents to provide bond hearings. It permits continued detention where the government demonstrates danger or flight risk. *Id*. at 1145–46.

## CONCLUSION

For these reasons, Petitioners respectfully request a stay pending the Supreme Court's decision in *Genalo v. D.C.* Alternatively, Petitioners request rehearing, updated briefing, and a decision on the constitutional question.

Respectfully submitted,

Dated: October 22, 2026

*/s/Ahilan T. Arulanantham*
AHILAN T. ARULANANTHAM
Counsel for Petitioners-Appellees

---

Court in 2017. *Jennings v. Rodriguez*, No. 15-1204 (U.S. Jan. 31, 2017). After the Supreme Court remanded for this Court to "consider [Petitioners'] constitutional arguments" "in the first instance," *Jennings*, 583 U.S. at 312, the parties again briefed the constitutional issue before this Court in 2018. *See Rodriguez v. Robbins*, 13-56706, Dkts. 213, 221 & 229.

## **CERTIFICATE OF COMPLIANCE**

I, Ahilan T. Arulanantham, a member of the Bar of this Court and counsel for Petitioners certify, pursuant to Federal Rules of Appellate Procedure 32(f), Ninth Circuit Rule 32-1(g)(2)(A), and Ninth Circuit Rule 40-1, that the attached Motion to Stay Proceedings or, Alternatively, Petition for Panel Rehearing is proportionately spaced, has a typeface of 14 points or more, and contains 3,849 words.

Dated: October 22, 2026

*/s/ Ahilan T. Arulanantham*
Ahilan T. Arulanantham

**NOT FOR PUBLICATION**

FILED

OCT 19 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEJANDRO RODRIGUEZ; et al.,<br><br>Petitioners-Appellees,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General; et al.,<br><br>Respondents-Appellants. | No. 20-55770<br><br>D.C. No.<br>2:07-cv-03239-TJH-RNB<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Jr., District Judge, Presiding

Submitted October 15, 2021**
Pasadena, California

Before: WARDLAW and GOULD, Circuit Judges, and HADDON,*** District Judge.

The United States appeals the district court's order refusing to dissolve the

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

*** The Honorable Sam E. Haddon, United States District Judge for the District of Montana, sitting by designation.

permanent injunction previously entered despite the subsequent vacatur of the underlying judgment. We have jurisdiction to hear this appeal under 28 U.S.C. § 1292(a)(1). We remand this case to the district court with instructions to vacate the permanent injunction.

1. The district court misinterpreted our opinion in *Rodriguez v. Marin* (*Rodriguez IV)*, 909 F.3d 252, 256 (2018) as an instruction to keep the permanent injunction in place. In *Rodriguez IV* we stated that: "Like the Supreme Court, we do not vacate the permanent injunction pending the consideration of these vital constitutional issues." 909 F.3d at 256. The district court interpreted that sentence as "instructions" to keep "the permanent injunction in place pending the consideration of the constitutional issues" which it was "obligated to follow." As a result, it denied the government's motion to vacate the permanent injunction.

We wish to resolve that misunderstanding. We did not intend to instruct the district court to maintain the permanent injunction based on plaintiffs' now-defunct statutory claims indefinitely. Instead, we indicated that we did not lift the injunction at the appellate level, like the Supreme Court, but were remanding for the district court to do so when it considered how it planned to proceed on plaintiffs' constitutional claims and other questions the Supreme Court asked it to consider in *Jennings v. Rodriguez*, 138 S. Ct. 830, 851–52 (2018).

2. On remand, the permanent injunction must be vacated because it lacks a basis in law. A permanent injunction is valid only if, among other things, it is supported by the plaintiff's "actual success on the merits," *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019) (citations omitted), and if it is tailored to address the specific injury the plaintiff has successfully proved, *Natural Resource Defense Council v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007).

When the district court issued the original permanent injunction, it was valid: the plaintiffs had achieved "actual success" on the merits of their statutory claims, and the court crafted an injunction designed to remedy those statutory violations. Since then, the nature of this case has been transformed. The plaintiffs have not only lost on the merits of their statutory claims, eliminating the entire foundation for the permanent injunction and subsequent relief, they have filed an amended complaint removing those claims from the case entirely.

3. Therefore, we remand this case to the district court with instructions to vacate the permanent injunction. Petitioners may, of course, move for a preliminary injunction based on their remaining claims. We also direct the district court to follow the instructions we clearly laid out in *Rodriguez IV*, 909 F.3d at 257, which comport with the Supreme Court's instructions in *Jennings*, 138 S. Ct. at 851–52.

**REVERSED AND REMANDED.**